IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

<table>
<tr><td><strong>TRACY COX; MARK COX; YVONNE WILLIAMS; and DAVID DAVIES,</strong></td><td>Civ. No. 6:22-cv-00906-AA</td></tr>
<tr><td>Plaintiffs,</td><td><strong>OPINION AND ORDER</strong></td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td><strong>ASSOCIATION OF OREGON CORRECTIONS EMPLOYEES, INC., et al.,</strong></td><td></td></tr>
<tr><td>Defendants.</td><td></td></tr>
</table>

_____

AIKEN, District Judge:

Plaintiffs are public employees who resigned their union membership and now allege breach of contract and seek relief under 42 U.S.C. § 1983 for violations of their First Amendment and Due Process rights. State defendants and defendant Association of Oregon Corrections Employees, Inc. ("AOCE" or "the union") each move to dismiss plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. For the

reasons explained, the Court GRANTS all Defendants' Motions to Dismiss, ECF Nos. 21 and 22. Plaintiffs' Complaint is DISMISSED without prejudice.

## BACKGROUND

Plaintiffs Tracy Cox, Mark Cox, David Davies, and Yvonne Williams are employees of defendant Oregon Department of Corrections ("ODOC"). They bring this action against ODOC; the Department of Administrative Services ("DAS"), Katy Coba, in their official capacity as director of DAS; and Colette Peters, in their official capacity as ODOC director ("State defendants"). Plaintiffs also bring claims against AOCE, the union.

## I.    Public Employees and Union Membership

Under Oregon law, union membership is voluntary. *See, e.g.*, *Dale v. Kulongoski*, 894 P.2d 462, 464 (Or. 1995) ("With respect to compulsory union membership, there is none."); *see also id*. at 465 n.5 ("[N]o law requires anyone to join the union or pay union dues."); *Wright v. Serv. Emps. Int'l Union Loc*. 503, 48 F.4th 1112, 1121 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023) ("Oregon do[es] not require state employees to join a union.")

Under the Oregon Public Employees Collective Bargaining Act ("PECBA"), it is a prohibited practice for a union or a public employer to coerce a public employee to become a union member. *See* ORS 243.672(2)(a), ORS 243.662 (making it an unfair labor practice for a public sector union to interfere with, restrain or coerce any employee in or because of the exercise of their right to join or not join a union). It is also an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees" in or because of the exercise of their right to join or not join a union

or to "[d]iscriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employee organization." ORS 243.672(1)(a), (c).

Oregon law allows public employees to voluntarily authorize dues deductions for their unions. *See* ORS 243.806(1) ("A public employee may enter into an agreement with a labor organization that is the exclusive representative to provide authorization for a public employer to make a deduction from the salary or wages of the public employee, in the manner described in subsection (4) of this section, to pay dues, fees and any other assessments or authorized deductions to the labor organization or its affiliated organizations or entities.").

A union may request the State to make deductions of union dues from a public employee's pay only if the employee has authorized the deductions. *See* ORS 243.806(2) ("A public employer shall deduct the dues, fees and any other deduction authorized by a public employee under this section and remit payment to the designated organization or entity."). AOCE and the State have a collective bargaining agreement ("CBA"), under which the State makes deductions of union dues from employee wages at the exclusive direction of the union. Compl., ¶¶ 74-75. ODOC receives instruction from AOCE to add or end dues deductions for employees represented by AOCE. Once ODOC receives that instruction, it processes the changes. Pye Decl. ¶ 3.

## II.    Factual Allegations

Plaintiffs filed their Complaint on June 22, 2022. Plaintiffs' seven claims arise from their resignation from union membership. They allege that when they informed

AOCE of their resignations, the AOCE attempted to, or did, require them to sign a cancellation form that contained terms with which Plaintiffs take issue. Compl., ¶¶ 1, 19, 29-30, 41-43, 49-58.

### A.    *Yvonne Williams*

Plaintiff Yvonne Williams (Williams) cancelled her membership in AOCE. Williams alleges AOCE told her she could not resign her membership in AOCE without signing the Membership Cancellation Form. She alleges signing the form which states:

> By signing this form, I wish to stop all dues paid to the AOCE. I realize that by doing so I will become a non-member of the AOCE. Once I am a nonmember, AOCE may charge me a fee for all representation I request in matters including but not limited to grievances, investigations, disciplinary hearings, overtime disputes, and reclassifications. I also will not be afforded any other ancillary benefits the AOCE may provide including the Legal Defense Fund and the Association attorney.

Williams alleges an unnamed AOCE representative told her she would have to pay a $500 fee if she wanted to rejoin AOCE and that if she needed legal representation, she would be charged $500 per hour. Compl., at 4-5.

### B.    *David Davies*

Plaintiff David Davies (Davies) cancelled his membership in AOCE without signing the Membership Cancellation Form. He alleges he was provided the Membership Cancellation Form, was told "payroll" needed it, and refused to sign it. After emails between Davies, AOCE, and ODOC payroll, his membership in AOCE was cancelled. Compl., at 5-7. He alleges "[u]pon information and belief, AOCE will charge [him] a fee for representation in grievances, investigations, disciplinary hearings, overtime disputes and reclassifications as long as he remains a non-

member." Compl., at 7. He also alleges, "[u]pon information and belief, AOCE will charge [him] a punitive $500 resign-up fee should he try to become a union member again." *Id.*

### C.   *Mark Cox*

Plaintiff Mark Cox (M. Cox) cancelled his membership in AOCE. He emailed AOCE in which he requested, "Please do not take any more money out of my check for union dues." He alleges AOCE told him that he must sign the Membership Cancellation Form for his resignation to be processed. He signed the form and his membership in AOCE was cancelled. Compl., at 7. He alleges "[u]pon information and belief, AOCE will charge [him] a fee for representation in grievances, investigations, disciplinary hearings, overtime disputes and reclassifications as long as he remains a non-member." Compl., at 8. He also alleges, "[u]pon information and belief, AOCE will charge [him] a punitive $500 resign-up fee should he try to become a union member again." *Id.* Cox retired from ODOC effective July 31, 2022. *See* ECF Nos. 29, 33 (supplemental memoranda).

### D.   *Tracy Cox*

Plaintiff Tracy Cox (T. Cox) cancelled her membership in AOCE. On November 10, 2021, she emailed DOC payroll stating: "I would like to place a stop on withdrawing any further dues from my pay." *Id.* She alleges DOC payroll responded that she needed to sign the Membership Cancellation Form. T. Cox emailed payroll and to AOCE in which she reiterated she did not authorize union dues deductions from her wages. AOCE responded with the Membership Cancellation Form. After several emails between T. Cox and AOCE, T. Cox sent a signed resignation of

membership to AOCE headquarters by certified mail on January 10, 2022. On January 13, 2022, AOCE emailed T. Cox it had received her resignation and would process the resignation and stop dues deductions and stated, "you will be charged a $500 initiation fee should you choose to rejoin AOCE." Compl., at 8-11, Ex. K. T. Cox alleges "[u]pon information and belief, AOCE will charge [her] a fee for representation in grievances, investigations, disciplinary hearings, overtime disputes and reclassifications as long as she remains a non-member, and a punitive $500 re-registration fee should she ever rejoin the union." Compl., at 12. T. Cox retired from ODOC effective July 31, 2022. *See* ECF Nos. 29, 33 (supplemental memoranda).

## III.  Legal Claims

Claims 1-5 are brought under 42 U.S.C. § 1983 against all Defendants. Claims I – IV allege First Amendment violations arising from Plaintiffs' union resignations, AOCE's terms in its membership cancellation form, and AOCE's $500 fee for rejoining. *See* Compl., ¶¶ 76-85 (Count I, alleging that union's membership cancellation terms had a chilling effect on their speech); *id*. ¶¶ 86-92 (Count II, claiming violation of freedom of association); *id*. ¶¶ 93-97 (Count III, Plaintiffs M. Cox and Williams claiming that the union made them sign membership resignation form, which violated their rights in forcing agreement to the terms in form); *id*. ¶¶ 98-104 (Count IV, plaintiff T. Cox claims union dues were deducted without authorization in violation of the First Amendment).

For the most part, the gist of Plaintiffs' argument for Claims I-IV is that the effect of agreeing to the cancellation terms to pay out of pocket for union representation as nonmembers, or pay a $500 fee to rejoin the union, was punitive;

or in Plaintiffs' terms, "threatening"—so much so, that the threat of the hourly fee for representation or the fee to rejoin suppressed their First Amendment right to free speech and association. Stated a different way, the benefits of membership in AOCE (here, not paying market rate, out of pocket costs for representation) compelled Plaintiffs to remain in it, even though they would prefer not to. An argument for unions, indeed.

Claim V is brought solely by T. Cox and alleges a procedural due process violation and challenges the constitutionality of ORS 243.806, which sets out Oregon's union dues deduction framework for public employees. T. Cox asserts that the State's reliance on union representations for dues deductions violates due process and that ORS 243.806 lacks sufficient procedural safeguards. Compl., ¶¶ 108-112.

Plaintiffs seek several forms of equitable relief against the State Defendants, including various injunctions and declarations. *See id.*, prayer ¶¶ A-G. They also demand nominal damages against all Defendants, although the Complaint does not specify for which claims they seek that relief. *Id.*, prayer ¶ H.

Claim VI is a state law claim brought by T. Cox solely against DAS. T. Cox alleges a violation of ORS 652.615, a state statute Plaintiffs contend authorizes a private state law cause of action for violation of ORS 652.610, which sets out wage and hour protections. *Id.* ¶¶ 114-120. T. Cox seeks "a return of all wages of which she has been unlawfully deprived along with all appropriate penalties pursuant to ORS 652.615." *Id.*, prayer ¶ J.

Claim VII is a breach of contract claim brought solely against AOCE. Plaintiffs claim that their contract with AOCE required only a written resignation to the union,

and that they had no contractual obligation to resign using the union's designated form. *Id.* ¶¶ 15, 58, 88, 122.

## LEGAL STANDARDS

### I.    Failure to State a Claim – Rule 12(b)(6)

To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court need not accept legal conclusions, unsupported by alleged facts, as true. *Id.* Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Parks School of Bus., Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). From the facts alleged, the court also must draw all reasonable inferences for the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But conclusory allegations, without more, are not enough to defeat a motion to dismiss for failure to state a claim. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

### II.    Lack of Subject Matter Jurisdiction – Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the

court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the court accepts the allegations of the complaint as true. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack … a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted).

## DISCUSSION

Defendant AOCE and State Defendants move separately to dismiss Plaintiffs' Complaint. *See* AOCE's Motion to Dismiss ("AOCE MTD"), ECF No. 21; State Defendants' Motion to Dismiss ("State MTD"), ECF No. 22. AOCE and State Defendants each challenge Plaintiffs' standing on various grounds. Because standing is jurisdiction, the Court addresses that first, then will address remaining claims in each motion to dismiss.

## I.    Standing

All Defendants assert that Plaintiffs' allegations do not present a present, live controversy and do not show any injury that is either ongoing or likely to recur. All Defendants assert that Plaintiffs' allegations that they are harmed by terms the

union is offering with respect to future membership or services are speculative. Union dues are not currently being deducted from any Plaintiffs' pay and were not being deducted from their pay when this lawsuit was filed; dues will not be deducted again in connection with their employment with ODOC unless they rejoin AOCE and AOCE instructs ODOC to begin withholding dues from their paychecks. State MTD at 5; Pye Decl. ¶¶ 4-8. All Defendants maintain that there is no allegation that any Plaintiffs intend to rejoin the union, as would be needed to establish a redressable injury with respect to the alleged $500 fee for rejoining the union, and given the circumstances here, there is no reason to believe that they would rejoin the union. Further, since filing the Complaint, T. Cox and M. Cox have retired from ODOC. *See* ECF Nos. 29, 33 (supplemental memoranda).

The court's jurisdiction extends only to live controversies between adverse parties where the relief requested, if granted, will have a practical effect. The Constitution does not allow federal courts to issue advisory opinions. *See Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999) (discussing Article III). A "federal court has no authority 'to give opinions upon moot questions or abstract propositions or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

To satisfy the "case or controversy" requirement, a plaintiff must establish standing under Article III. *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010). A plaintiff bears the burden of establishing: (1) an injury in fact; (2) causation; and (3) redressability. *Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*,

554 U.S. 269, 273-74 (2008). A plaintiff must demonstrate standing for each claim and for each form of relief sought. *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

Where, as here, a plaintiff seeks declaratory and injunctive relief, they must also show a preeminent possibility of future harm and establish that they personally are realistically threatened by a repetition of the injury. *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013); *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012). "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Plaintiffs' allegations in Claim I – III are that Defendants' conduct, in requiring resignation to be made on a Cancellation Form, chills Plaintiffs' First Amendment right to free speech and association, as does AOCE's statement that once resigned, AOCE will charge a $500 fee to rejoin or require non-members to pay for union representation.

Plaintiffs' allegations that they are harmed by the (allegedly) unlawful terms the union is offering them with respect to future membership or services are speculative. Plaintiffs allege that the purpose of the Cancellation Form is to "inhibit employees . . . from ending their union membership." Compl., ¶¶ 83, 89. Further, that Defendants "prevented" Plaintiffs "from resigning their membership" unless they "agreed that AOCE may withdraw fair representation" of Plaintiffs upon resignation. *Id*. ¶¶ 94. But all Plaintiffs *did* end their union membership. Further, there is no

allegation that any Plaintiffs intend to rejoin the union, as would be needed to establish a redressable injury with respect to the alleged $500 fee for rejoining the union. Further, that T. Cox and M. Cox have retired from public employment underscores the lack of live controversy here.

Plaintiffs allege that because AOCE does not represent nonmembers, this satisfies the requirement of an ongoing injury. *Id*. ¶¶ 84, 91. But, again, Plaintiffs exercised their alleged right to resign membership, and now assert hypothetical fears of future harm based on the harm they inflicted on themselves by becoming nonmembers. "[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Accordingly, the Court finds that Plaintiffs lack standing to bring Claims I – III, which are all based on Defendants' alleged "chilling," "inhibition," and "prevention" of Plaintiffs' membership resignation, resulting in the alleged harm of not receiving benefits of membership. Therefore, Claims I - III against AOCE and State Defendants are dismissed.

As to Claims IV – VII, the Court determines that Plaintiffs have standing to bring those claims and will address the allegations on the merits.[1]

## II.    Motions to Dismiss

Because AOCE and State Defendants bring motions to dismiss based on different theories, the Court will address each motion in the order of filing.

---

[1]    As will be explained, all Plaintiffs' Claims against AOCE and State Defendants fail on the merits or on some other basis. Even if Plaintiffs had standing, their failure to state a claim under Rule 12(b)(6) or for other jurisdictional reasons would lead to dismissal.

A.    *AOCE Motion to Dismiss*

1.    **Claims IV-V: Constitutional Violations - 42 U.S.C. § 1983**

Claim IV is brought by T. Cox only, against all Defendants. Compl., ¶¶ 98 – 104. T. Cox alleges, under § 1983 that AOCE failed to instruct the State to discontinue dues deductions after she revoked her membership in writing, and that the deduction of unauthorized dues constituted compelled speech in violation of her First Amendment rights. *Id.*

T. Cox also brings Claim V on her own, alleging violation of her Due Process right under the Fourteenth Amendment when AOCE "deprived her of her property interest in her lawfully earned wages," by representing to the State that T. Cox was a union member, and thereby having union dues deducted without authorization. Compl., ¶¶ 105 – 113.

AOCE asserts that it is not a state actor and that Plaintiffs' claims under § 1983 fail. Plaintiffs allege that AOCE is a state actor for purposes of § 1983 because "AOCE relies on the State of Oregon pursuant to ORS 243.650 *et seq.*," and "acts under color of state law" in exercise of the rights "granted to it by the state's collective bargaining laws." Compl., ¶ 101.

To state a claim under § 1983, a plaintiff must prove that the private actor "deprived [her] of a right secured by the Constitution," and "acted under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989) (citation omitted). Courts in the Ninth Circuit use a two-prong inquiry to determine whether a private actor, such as a union, engaged in state action to qualify as a state actor under § 1983. *Belgau*, 975 F.3d at 946*; see also Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590

F.3d 806, 812 (9th Cir. 2010) (citation omitted) (holding that state action generally excludes "merely private conduct, no matter how discriminatory or wrongful"). The private actor must meet (1) the "state policy" requirement, and (2) the "state actor" requirement. *Collins*, 878 F.2d at 1151.

### i.      *Prong One: State Policy*

Under the state policy prong, courts consider "whether the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible.'" *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "The state policy requirement ensures that the alleged deprivation is fairly attributable to a state policy." *Collins*, 878 F.2d at 1151 (citations omitted).

Plaintiffs do not identify, *as the basis of their alleged deprivation*, the imposition of a state policy or state created rule. The conduct of which Plaintiffs complain is private. Plaintiffs allege harm from agreements between AOCE and Plaintiffs for dues deductions. What Plaintiffs describe is an alleged failure by AOCE, a private entity, to contact the State and stop dues after a valid revocation of a voluntary authorization to deduct dues, along with improper coercion of union membership. If AOCE failed to contact the State to stop dues after a valid revocation, that would violate Oregon law, not implementation of it. *Wright,* 503, 48 F.4th at 1121 (explaining that Oregon statutes prohibit mandatory union membership).

Accordingly, Plaintiffs' allegations conflict with any "right or privilege created by the State" because it violates existing state law.

### ii.    Prong Two: State Actor

Under the state actor prong, courts generally employ one of four tests outlined by the Supreme Court to examine "whether the party charged with the deprivation could be described in all fairness as a state actor." *Ohno*, 723 F.3d at 994 (citing *Lugar*, 457 U.S. at 937); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (outlining the four tests). Those tests include the public function test, the joint action test, the state compulsion test, and the governmental nexus test. *Tsao*, 698 F.3d at 1140. Any of the four tests are enough to satisfy the state actor requirement. *Id.* at 1139–40. The public function test and joint action test "largely subsume the state compulsion and governmental nexus tests, because they address the degree to which the state is intertwined with the private actor or action." *Ohno*, 723 F.3d at n. 13. To the extent that a union's deductions are unlawful, "private misuse of a state statute does not describe conduct that can be attributed to the State." *Collins v. Womancare*, 878 F.2d 1145, 1152 (9th Cir. 1989)

Plaintiffs assert that AOCE meets the "public function" and "joint action" tests, making it a state actor. Resp. at 20-22. The public function test "treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government." *Ohno*, 723 F.3d at 996 (citations omitted). "A joint action between a state and a private party may be found in two scenarios: the government either (1) 'affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party,' or (2) 'otherwise has so far insinuated itself into a position of interdependence with the nongovernmental party,' that it is 'recognized as

a joint participant in the challenged activity." *Belgau*, 975 F.3d at 947 (citing *Ohno*, 723 F.3d at 996).

Under circumstances indistinguishable from those here, the Ninth Circuit determined that a union is not a state actor for purposes of § 1983. *Belgau*, 975 F.3d at 947 (state action not found under joint action test, where plaintiffs had entered into bargained-for agreements with the union without any state direction, participation, or oversight); *Wright* 503 48 F.4th at 1124-25 (no state action under joint action and public function test, where "Oregon state law only authorizes the State to deduct and remit union dues from authorized union members."). In *Wright*, the Ninth Circuit squarely rejected the plaintiff's argument that the State's ministerial role in processing dues deductions rendered the union a state actor. *Id*. at 1121.

Plaintiffs' allegations give rise only to an inference that the State occupied no more than a ministerial role in processing dues. Plaintiffs do not allege that the state directed AOCE's allegedly unconstitutional conduct. Noted above, Plaintiffs allege that Oregon law requires the State to deduct dues from wages and remit them to the union, Compl., ¶ 78, and that AOCE "relies" on the State's collective bargaining laws to be the exclusive representative for public employees, *id*. ¶ 101. Plaintiffs have failed to allege facts establishing that AOCE acted to "perform a task or exercise powers traditionally reserved to the government" or that the State "affirm[ed], authorize[ed], encourage[ed], or facilitate[ed]" AOCE's conduct. *Ohno*, 723 F.3d at 996. To the contrary, Plaintiffs argue that Oregon, as a governing authority, "has passed legislation that gives AOCE unbridled control over dues deductions." Resp. at

21. That argument is correct. Accordingly, Plaintiffs' claims against AOCE under § 1983 are dismissed under Rule 12(b)(6).

Plaintiffs next claim, Claim VI, is against DAS only. Thus, the Court turns to Claim VII.

### 2.    Claim VII: Breach of Contract

Under Claim VII, all Plaintiffs bring a breach of contract claim against AOCE only. Compl., ¶¶ 121-124. Plaintiffs allege that AOCE violated the terms of its membership agreements with Plaintiffs by "forcing Plaintiffs to maintain union membership and pay union dues after they resigned membership and revoked their authorization for dues deductions pursuant to the terms of their membership card, which requires only written resignation and revocation of authorization for dues deductions." *Id*. ¶ 122. Plaintiffs state that AOCE used "unfair threats" to "force Plaintiffs to agree to terms in the Cancellation Form" and caused Plaintiff Cox to suffer financial loss through deduction of unauthorized dues. *Id*. ¶ 123-24.

Defendant AOCE asserts that this claim should be dismissed because all Plaintiffs' claims against AOCE must be brought as Unfair Labor Practices ("ULPs") and filed with the Oregon Employment Relations Board. MTD at 11. As noted, Plaintiffs have alleged violation of the duty of fair representation, withholding dues after the revocation of an authorization for the deductions, and unfair threats to force Plaintiffs to agree to cancellation terms after they fulfilled their contractual obligations without additional consideration.

The ERB has exclusive jurisdiction over unfair labor practice claims, but it does not have exclusive jurisdiction over all claims by employees against their

employers. *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. Sch. Dist. No. 9*, 880 F.3d 1097, 1108 (9th Cir. 2018). The "ERB has exclusive jurisdiction to determine whether an unfair labor practice has been committed." *Ahern v. Or. Pub. Emps. Union*, 329 Or. 428, 988 P.2d 364, 368 n.4 (1999). If resolving the complaint does not require determining whether an unfair labor practice has occurred, it does not thereby create a danger of "inconsistent rulings about what acts may constitute an unfair labor practice." *Id.* at 368 (holding that the ERB's exclusive jurisdiction is a way to prevent inconsistent rulings about which acts constitute unfair labor practices). The label assigned by a plaintiff is not critical; the court looks to the nature of the claim. See *Ahern v. OPEU*, 329 Or. 428, 430 (1999) ("Despite its tort label, the gravamen of plaintiff's complaint is that [the union] has committed an unfair labor practice."

The Court turns to Oregon law to determine whether Plaintiffs' claim is one rooted in labor laws. Pursuant to ORS 243.650(24): "'Unfair labor practice' means the commission of an act designated an unfair labor practice in ORS 243.672." ORS 243.672 (2)(c) states it is an unfair labor practice for a public employee or for a labor organization to refuse or fail to comply with any provision of ORS 243.650 to 243.809. ORS 243.806, provides:

> (6) A public employee's authorization for a public employer to make a deduction under subsections (1) to (4) of this section shall remain in effect until the public employee revokes the authorization in the manner provided by the terms of the agreement. If the terms of the agreement do not specify the manner in which a public employee may revoke the authorized deduction, a public employee may revoke authorization for the deduction by delivering an original signed, written statement of revocation to the headquarters of the labor organization.

\*\*\*

> (10)(a) If a dispute arises between the public employee and the labor organization regarding the existence, validity or revocation of an authorization for the deductions and payment described under subsections (1) and (2) of this section, the dispute shall be resolved through an unfair labor practice proceeding under ORS 243.672.

From its text, whether a plaintiff has fulfilled their contractual obligations by submitting valid revocations is litigated as a ULP under ORS 243.806(10). Further, a union threatening its members is a ULP under ORS 243.672(2)(a). ORS 243.806(10)(a) provides if a dispute arises between an employee and a union regarding the validity or revocation of an authorization for dues deductions it shall be resolved through an unfair labor practice proceeding.

Plaintiffs argue they "do not allege a dispute over the 'existence, validity or revocation' of a dues authorization card," and claim dues were withheld after valid revocations. Resp. at 9. But each time AOCE told Plaintiffs they needed to submit an AOCE membership cancellation form for the revocation to be valid.

Plaintiffs repeatedly assert that AOCE required a cancelation form for their revocation to be valid: "AOCE told Ms. Williams that she could not resign her membership in AOCE without signing the Membership Cancellation form." Resp. at 2. "Later, AOCE sent the Membership Cancellation Form described above to Davies by email, insisting that he sign it because 'payroll' need it before deduction of union dues would end." *Id.* at 3. "AOCE responded that Mr. Cox must sign the membership cancellation form before his resignation would be processed and before it would instruct DOC to end deductions of union dues from his wages." *Id.* 4. "Ms. Cox first revoked her authorization for dues deductions to DOC payroll on November 10, 2021.

DOC payroll responded by stating that Ms. Cox had to sign the AOCE cancellation form." *Id*. at 4. "AOCE representative Gary Harkens also informed Ms. Cox that she had to sign the form." *Id*. 6. "AOCE reiterated that if Ms. Cox filled out the form 'dues will stop.'" *Id*. Finally, Plaintiffs allege they submitted valid revocations yet were threatened by AOCE. They allege AOCE "used unfair threats to force Plaintiffs to agree to terms in the Membership Cancellation Form after Plaintiffs had fulfilled their contractual obligations, and without additional consideration." Complaint ¶ 123.

Those allegations of threats are conduct constituting a ULP under ORS 243.672(2)(a) and (2)(c). When claims allege conduct constituting a ULP, the Public Employee Collective Bargaining Act (PECBA) abolishes independent causes of action for granting ERB exclusive jurisdiction over those claims. *Coleman v. Children's Services Div.*, 694 P.2d 555, 557, 71 Or. App. 687, 691-692 (1984) *rev den* 701 P.2d 784, 299 Or. 251 (1985). The gravamen of Plaintiffs' breach of contract claim is that AOCE committed a ULP. Accordingly, the ERB has exclusive jurisdiction over this claim. With ERB's exclusive jurisdiction there would be no supplemental jurisdiction. Thus, Claim VII is dismissed.

In sum, against AOCE, Plaintiffs lack standing to bring claims I – III. Under 42 U.S.C. § 1983, all claims I-V fail as a matter of law, as AOCE is not a "state actor." Where there is no threat of imminent injury. When all the Federal claims against AOCE fail, what is left is a state law breach of contract claim - an alleged Unfair Labor Practice (Count VII). There is no supplemental jurisdiction for this final claim.

**B.    *State Defendants' Motion to Dismiss***

As a reminder, the Court determined that Plaintiffs lacked standing to bring Claims I – III against all Defendants. The Court therefore addresses the remaining claims, Claims VI, V, VI.

### 1.    Claims IV-V: Violations under 42 U.S.C. § 1983

Along with the jurisdictional arguments noted above in Section I, State Defendants also move to dismiss Plaintiffs' § 1983 claims against them under Rule 12(b)(6) for failing to state a claim. State Defendants argue that Plaintiffs failed to allege facts to show plausibly demonstrate any wrongdoing by State Defendants, where Plaintiffs cannot show that its deduction of dues, at the union's request, was anything but ministerial. State MTD at 14.

Both Claim VI and V stem from Ms. Cox's allegation that AOCE failed to timely instruct the State to discontinue dues deductions and failed to compensate her for the alleged unlawful dues deductions. *See id.* ¶¶ 99, 110-111.

In Claim IV for "deduction of union dues without authorization" in violation of the First Amendment, Plaintiffs allege no facts showing how State Defendants violated Plaintiffs' rights or caused any harm by such violation. Plaintiffs' bare assertions that AOCE "relies on the State of Oregon" and its laws to operate, Compl., ¶ 101, or that "Defendants' policies are significantly broader than necessary," *id.*, ¶ 104 are not enough to state a claim for relief.

Likewise, in Claim V for deprivation of property interest in her wages, T. Cox alleges no facts from which the Court can glean a plausible claim against State Defendants. Plaintiff claims that "ORS 243.806 is unconstitutional . . . because it lacks procedural safeguards." *Id.* ¶ 108. As explained above, ORS 243.806 sets forth

requirements for authorization of deductions from wages of dues to remit to a labor unions. Plaintiff T. Cox identifies no text, from any of its ten subsections, that is unconstitutionally overbroad and only makes conclusory legal assertions. Plaintiff's allegation that "Oregon law requires [ODOC] to deduct union dues in accordance with instructions by AOCE," *id.* ¶ 112, is also not enough to allege any wrongdoing by State Defendants.

To survive a motion to dismiss under the federal pleading standards, Plaintiffs must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570. Plaintiffs' claims against State Defendants lack facial plausibility, because Plaintiffs have not pled factual content that allows the Court to draw the reasonable inference that State Defendants are liable for the misconduct alleged. The Court need not accept legal conclusions, unsupported by alleged facts, as true. Accordingly Claims IV – V against State Defendants are dismissed.

### 2.    C*laim VI: Unlawful Withholding of Wages – ORS 652.615*

In Plaintiffs' Sixth Claim for Relief, T. Cox brings a claim against DAS for wrongful withholding of wages under ORS 652.615. Compl., ¶¶ 114-120. T. Cox alleges that the State deducts union dues from her paycheck; that she withdrew her dues authorization; DAS deducted the dues anyway; and caused her to suffer loss of wages. *Id.*

State Defendants move to dismiss on the grounds that Plaintiff's claim is barred by sovereign immunity. State MTD at 13.

The Eleventh Amendment bars all state law claims "brought into federal court [against nonconsenting states] under pendent jurisdiction." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121 (1984). Although the *Ex parte Young*, 209 U.S. 123 (1908), exception to the Eleventh Amendment allows a plaintiff to allege prospective injunctive relief against a state official in his official capacity, it applies only to enjoin ongoing violations of federal law—not state law. *See Pennhurst*, 465 U.S. at 106 (the *Ex parte Young* doctrine is "inapplicable in a suit against state officials on the basis of state law"); *Hale v. State of Ariz.*, 967 F.2d 1356, 1369 (9th Cir. 1992), *on reh'g,* 993 F.2d 1387 (9th Cir. 1993) ("the Eleventh Amendment deprives federal courts of jurisdiction to order state actors to comply with state law"); *Johnson v. Brown*, No. 3:21-CV-1494-SI, 2021 WL 4846060, at *19 (D. Or. Oct. 18, 2021) ("Plaintiffs' state statutory argument cannot provide a basis for the injunctive relief Plaintiffs request because Defendants have sovereign immunity from this Court's jurisdiction to issue an injunction instructing state officials on how to conform their conduct to state law."); *Olson v. Allen*, 3:18-CV-001208-SB, 2019 WL 1232834, at *5 (D. Or. Mar. 15, 2019) (dismissing state statutory claims against state agency and state official on Eleventh Amendment grounds).

Here, State Defendants do not consent to the Court's jurisdiction. State MTD at 13. Accordingly, the Court finds that the Eleventh Amendment bars Plaintiff's claim. Therefore, T. Cox's Claim VI is dismissed against DAS.

In resolving the State Defendants' motion to dismiss, the Court notes that Defendants raised a host of other meritorious arguments that the Court does not reach.

**CONCLUSION**

For the reasons explained, AOCE's Motion to Dismiss, ECF No. 21, is GRANTED. State Defendants' Motion to Dismiss, ECF No. 22, is GRANTED. Plaintiffs' Complaint, ECF No. 1, is DISMISSED without prejudice to allow the filing of state law claims in a competent court. The case DISMISSED and the Clerk is Directed to Close the case. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this 28th day of March 2024.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge